Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUIS LEYVA JR., | Case No.: |
| Plaintiff, | **Complaint For:** |
| vs. | (1)  Violation of § 14 (a) of the Securities Exchange Act of 1934 |
| EVO PAYMENTS, INC., RAFIK R. SIDHOM, JAMES G. KELLY, MARK A. CHANCY, VAHE A. DOMBALAGIAN, NIKKI T. HARLAND, JOHN S. GARABEDIAN, DAVID W. LEEDS, LAURA M. MILLER, STACEY VALY PANAYIOTOU, GREGORY S. POPE, and MATTHEW W. RAINO, | (2)  Violation of § 20(a) of the Securities Exchange Act of 1934 |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff, Luis Leyva Jr. ("Plaintiff"), by and through his attorneys, alleges upon

information and belief, except for those allegations that pertain to him, which are alleged upon

personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.     Plaintiff brings this stockholder action against EVO Payments, Inc. ("EVO" or the

"Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,"

and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a)

of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts

to sell the Company to Global Payments Inc., through merger vehicle Falcon Merger Sub Inc. ("Merger Sub" and collectively with Parent, "Global Payments") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in an August 2, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of EVO's common stock will be converted into the right to receive $34.00 in cash, without interest.

3.      Thereafter, on September 6, 2022, EVO filed a Preliminary Proxy Statement on Form PREM14A attaching the proxy statement (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement in an effort to Plaintiff, to vote in favor of the Proposed Transaction.  The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in

favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for EVO, provided by EVO management to the Board and the Board's financial advisor Citigroup Global Markets Inc. ("Citi") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Citi, if any, and provide to the Company and the Board.

6.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

7.     Plaintiff is a citizen of Florida and, at all times relevant hereto, has been an EVO stockholder.

8.     Defendant EVO operates as an integrated merchant acquirer and payment processor in the Americas and Europe. EVO is incorporated in Delaware and has its principal place of business at Ten Glenlake Parkway, South Tower, Suite 950, Atlanta, Georgia.  Shares of EVO common stock are traded on the Nasdaq Stock Exchange under the symbol "EVOP".

9.     Defendant Rafik R. Sidhom ("Sidhom") has been a Director of the Company at all relevant times.  In addition, Sidhom serves as the Chairman of the Board of Directors.

10.     Defendant James G. Kelly ("Kelly") has been a director of the Company at all relevant times. In addition, Kelly serves as the Chief Executive Officer ("CEO") of the Company.

11.     Defendant Mark A. Chancy ("Chancy") has been a director of the Company at all relevant times.

12.     Defendant Vahe A. Dombalagian ("Dombalagian") has been a director of the Company at all relevant times.

13.     Defendant Nikki T. Harland ("Harland") has been a director of the Company at all relevant times.

14.     Defendant John S. Garabedian ("Garabedian") has been a director of the Company at all relevant times.

15.     Defendant David W. Leeds ("Leeds") has been a director of the Company at all relevant times.

16.     Defendant Laura M. Miller ("Miller") has been a director of the Company at all relevant times.

17.     Defendant Stacey Valy Panayiotou ("Panayiotou") has been a director of the Company at all relevant times.

18.     Defendant Gregory S. Pope ("Pope") has been a director of the Company at all relevant times.

19.     Defendant Matthew W. Raino ("Raino") has been a director of the Company at all relevant times.

20.     Defendants identified in ¶¶ 9 - 19 are collectively referred to as the "Individual Defendants."

21.     Non-Party Global Payments provides payment technology and software solutions for card, electronic, check, and digital-based payments in the Americas, Europe, and the Asia-Pacific. Shares of Global Payments common stock are traded on the New York Stock Exchange under the symbol "GPN."

22.    Non-Party Merger Sub is a wholly owned subsidiary of Global Payments created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

23.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

24.    Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

25.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the Nasdaq Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

26.    EVO Payments, Inc. operates as an integrated merchant acquirer and payment processor in the Americas and Europe. Its payment and commerce solutions consist of EMV, chip and signature enabled POS terminals, virtual POS terminals for desktops, mobile acceptance and mPOS solutions software-based POS solutions, online hosted payments, and integrated payment

service provider. It also offers value added solutions, such as gateway solutions, online hosted payments page capabilities prevention and management reporting, loyalty programs, mobile-based SMS integrated payment collection services, security tokenization and encryption solutions at the point-of-sale, dynamic currency conversion, ACH, and other ancillary solutions. The company also offers processing capabilities for specific industries and provides merchants with recurring billing, multi-currency authorization and settlement, and cross-border processing and settlement. In addition, it provides other services that enable through technical integrations with third-party providers. The company offers its services to approximately 550,000 merchants. EVO Payments, Inc. was founded in 1989 and is headquartered in Atlanta, Georgia.

27.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success.  For example, in the May 4, 2022 press release announcing its 2022 Q1 financial results, the Company highlighted net income of $5.2 million compared to a net loss of $2.8 million the year prior. In addition, Adjusted EBITDA increased 18% to $40.0 million for the quarter.

28.     Speaking on the positive results, CEO Defendant Kelly said, "I am very pleased with our first quarter results and the continued business acceleration we are demonstrating so far this year," … "Our strong financial performance was driven by growth from our bank and tech-enabled sales channels across the Americas and Europe. I remain excited about our expanded suite of capabilities and growing referral networks, which will enhance our ability to drive accelerated top- and bottom-line growth for our business."

29.     The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by EVO.  Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

30.     Despite this upward trajectory, the Individual Defendants have caused EVO to enter into the Proposed Transaction without providing requisite information to EVO stockholders such as Plaintiff.

***The Flawed Sales Process***

31.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

32.     Notably, the Preliminary Proxy Statement reveals that the sales process was calculated with one goal in mind – to sell the Company to Global Payments. The Preliminary proxy reveals that besides the unsolicited contact with one other potentially interested party prior to contact by Parent, neither the Board, Citi, nor anyone else on the Company's behalf conducted a market check for potentially interested third parties.

33.     The Preliminary proxy details that a "TRA Committee" was formed to evaluate the Proposed Transaction, however, the Preliminary Proxy does not indicate the specific powers of this committee, including whether or not it had the power to veto any proposed strategic alternative.

34.     In addition, the Preliminary Proxy indicates that prior to the creation of the TRA Committee, an "Investment Committee" of the Board met to discuss the sales process and make decisions regarding the same, however the Preliminary Proxy fails to give adequate information

regarding the Investment Committee, including its members, role, powers, differences between it and the later formed TRA Committee, and whether the Investment Committee continued to operate after the TRA Committee was formed.

35.     Moreover, while the Preliminary Proxy indicates that the Company retained the services of Ernst & Young LLP to perform services and analyses relating to the sales process, it fails to provide these analyses and fails to indicate what payment Ernst & Young LLP received or is owed for the same.

36.     The Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Global Payments, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

37.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

38.     On August 1, 2022, EVO and Global Payments issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **ATLANTA--(BUSINESS WIRE)--** Global Payments Inc. (NYSE: GPN), a leading worldwide provider of payment technology and software solutions, and EVO Payments, Inc. (NASDAQ: EVOP), a leading global provider of payment technology integrations and acquiring solutions, today announced that Global Payments will acquire EVO in an all-cash transaction for $34.00 per share.

> The transaction will significantly increase Global Payments' target addressable markets, further enhance its leadership in integrated payments worldwide, expand its presence in new and existing faster growth geographies, and augment its B2B

software and payment solutions with the addition of accounts receivable software with broad third-party acceptance.

"The acquisition of EVO is highly complementary to our technology-enabled strategy and provides meaningful opportunities to increase scale in our business globally," said Cameron Bready, President and Chief Operating Officer, Global Payments. "Together with EVO, we are positioned to deliver an unparalleled suite of distinctive software and payment solutions to our combined 4.5 million merchant locations and more than 1,500 financial institutions worldwide."

The transaction will expand Global Payments' geographic footprint into attractive new geographies such as Poland, Germany, Chile, and upon closing, Greece, as well as enhance its scale in existing markets, including the United States, Canada, Mexico, Spain, Ireland and the United Kingdom.

The acquisition will also add leading accounts receivable automation software capabilities that complement Global Payments' existing B2B and accounts payable offerings. Further, EVO will bring an array of key technology partners and proprietary integrations, including with the most widely used ERP software providers.

"Joining EVO and Global Payments will unite highly complementary portfolios of technology-enabled products and partnerships to create an even stronger organization serving a broader customer base," added Jim Kelly, Chief Executive Officer, EVO. "Over the last decade, the EVO team has worked diligently to advance our innovative solutions, strengthen the service we provide to our bank and technology-enabled partners, and grow our global footprint. This transaction is an achievement for our company, and we believe it delivers compelling value to our shareholders and accelerates our growth opportunities."

Transaction Details

The transaction has been unanimously approved by each company's Board of Directors. Pursuant to the terms of the merger agreement, Global Payments will acquire the outstanding equity of EVO for $34.00 per share in cash ($4.0 billion of enterprise value for EVO). The purchase price represents a premium of approximately 24% and 40% to EVO's last closing price and to its 60-day average price, respectively, as of July 29, 2022.

Global Payments expects to finance the acquisition with cash on hand and a committed bank facility. Silver Lake will make a strategic investment of $1.5 billion in Global Payments in the form of a convertible note. In connection with the investment by Silver Lake, and subject to market conditions and other factors, Global Payments expects to enter into a call spread or other derivative transaction designed to raise the effective conversion premium of the convertible note.

The transaction, which is subject to EVO stockholder approval, regulatory approvals and other customary closing conditions, is expected to deliver $125 million of run-rate synergies and be accretive in the first year after close. The transaction is expected to close no later than the first quarter of 2023.

Certain investment funds affiliated with Madison Dearborn Partners, LLC and other EVO stockholders have entered into voting agreements pursuant to which they have agreed, among other things, to vote their shares of EVO stock in favor of the transaction, subject to certain conditions. These stockholders currently represent approximately 22% of the voting power of EVO's stock.

### Potential Conflicts of Interest

39.     The breakdown of the benefits of the deal indicate that EVO insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of EVO.

40.     Company insiders, including the Director Defendants, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  Notably, while the Preliminary Proxy Statement provides the following information, it fails to account for the cash consideration which such shares will be exchanged.

**Beneficial Ownership in EVO Payments, Inc.**

| Name of beneficial owner | Class A common stock Number | % | Class D common stock Number | % | Series A convertible preferred stock Number | % | Combined Voting Power[14] |
|---|---|---|---|---|---|---|---|
| 5% Stockholders | | | | | | | |
| Madison Dearborn Partners LLC[1] | 304, 138 | * | 1,559,840 | 41.7% | 152,250 | 100.0% | 20.5% |
| Brown Advisory Incorporated[2] | 6,350,304 | 13.2% | — | — | — | — | 10.1% |
| The Vanguard Group[3] | 4,560,970 | 9.5% | — | — | — | — | 7.2% |
| BlackRock, Inc.[4] | 3,562,212 | 7.4% | — | — | — | — | 5.7% |
| Massachusetts Financial Services Company[5] | 3,546,199 | 7.4% | — | — | — | — | 5.6% |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Greenhouse Funds LLLP[6] | 2,423,581 | 5.0% | — | — | — | — | 3.8% |
| *Directors and Named Executive Officers* | | | | | | | |
| Rafik R. Sidhom[2] | — | — | — | — | — | — | — |
| Mark A. Chancy | 14,855 | * | — | — | — | — | * |
| Vahe A. Dombalagian[1] | 304,138 | * | 1,559,840 | 41.7% | 152,250 | 100.0% | 20.5% |
| Nikki T. Harland | — | — | — | — | — | — | — |
| John S. Garabedian | 48,275 | * | — | — | — | — | * |
| David W. Leeds | 30,858 | * | — | — | — | — | * |
| Laura M. Miller | 14,241 | * | — | — | — | — | * |
| Stacey Valy Panayiotou | 4,687 | * | — | — | — | — | — |
| Gregory S. Pope | 102,473 | * | — | — | — | — | * |
| Matthew W. Raino[1] | 304,138 | * | 1,559,840 | 41.7% | 152,250 | 100.0% | 20.5% |
| James G. Kelly[8] | 1,051,873 | 2.1% | 1,014,618 | 27.1% | — | — | 3.2% |
| Thomas E. Panther[9] | 113,111 | * | — | — | — | — | * |
| Michael L. Reidenbach[10] | 286,189 | * | 272,563 | 7.3% | — | — | * |
| Brendan F. Tansill[11] | 328,157 | * | 127,142 | 3.4% | — | — | * |
| Darren Wilson[12] | 385,108 | * | — | — | — | — | * |
| All executive officers and directors as a group (19 persons)[13] | 3,034,760 | 6.0% | 2,987,323 | 79.9% | 152,250 | 100.0% | 26.2% |

41.    Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as follows:

| Named Executive Officer | Cash ($)[1] | Equity ($)[2] | Total ($) |
|---|---|---|---|
| James G. Kelly | 3,845,000 | 10,163,159 | 14,008,159 |
| Thomas E. Panther | 919,000 | 3,104,449 | 4,023,449 |
| Michael L. Reidenbach | 1,380,901 | 2,808,531 | 4,189,432 |
| Brendan F. Tansill | 564,040 | 2,885,851 | 3,449,891 |
| Darren Wilson | 560,844 | 2,885,851 | 3,446,695 |

42.    Moreover, the Preliminary Proxy Statement outlines certain "TRA Payments" that will inure upon certain Company insiders upon the consummation of the Proposed Transaction. These payments are significant, not shared amongst Plaintiff and other public stockholders of the Company, and amount as follows:

43.

| Director or Executive Officer | TRA Payment |
|---|---|
| James G. Kelly | $ 1,570,297 |
| James G. Kelly Grantor Trust | $ 3,157,372 |
| Brendan Tansill | $ 982,966 |
| Michael L. Reidenbach | $ 1,334,221 |
| David Goldman | $ 99,521 |

| | |
|---|---|
| MDP Entities[1] | $ 67,309,593 |
| Blueapple[2] | $142,237,964 |

(1)  Matthew W. Raino and Vahe A. Domalagian, both of whom are members of the Board, are managing directors of MDP LLC and, as a result, are deemed affiliated with, and beneficial owners of, the MDP Entities. Madison Dearborn Capital Partners Executive is entitled to receive $520,452, Madison Dearborn Capital Partners VI-B, L.P. is entitled to receive $50,507,173, Madison Dearborn Capital Partners VI-C, L.P. is entitled to receive $9,949,465, MDCP VI-C Cardservices Splitter II, L.P. is entitled to receive $0 and MDCP Cardservices, LLC is entitled to receive $6,332,503.

(2)  Rafik R. Sidhom, the Chairman of the Board, is the Chief Executive Officer and controlling shareholder of Blueapple.

44.     In addition, certain employment agreements with certain EVO executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows

| Named Executive Officer | Cash ($)[1] | Equity ($)[2] | Total ($) |
|---|---|---|---|
| James G. Kelly | 3,845,000 | 10,163,159 | 14,008,159 |
| Thomas E. Panther | 919,000 | 3,104,449 | 4,023,449 |
| Michael L. Reidenbach | 1,380,901 | 2,808,531 | 4,189,432 |
| Brendan F. Tansill | 564,040 | 2,885,851 | 3,449,891 |
| Darren Wilson | 560,844 | 2,885,851 | 3,446,695 |

45.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

46.     Thus, while the Proposed Transaction is not in the best interests of EVO, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

47.     On September 6, 2022, the EVO Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*<u>Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction</u>*

48.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

    a.   Adequate disclosure as to why no market check was conducted;

    b.   Adequate information as to the Powers of the TRA Committee;

    c.   Adequate information regarding the Investment Committee's role in the sales process, including its members, role, powers, differences between it and the later formed TRA Committee, and whether the Investment Committee continued to operate after the TRA Committee was formed;

    d.   Adequate disclosures regarding Ernst & Young LLP's role, the analyses it performed, and the compensation paid and/or owed to it by the Company for the same;

e.  Whether the confidentiality agreements entered into by the Company with Global Payments differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

f.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Global Payments, would fall away; and

g.  Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning EVO's Financial Projections*

49.   The Preliminary Proxy Statement fails to provide material information concerning financial projections for EVO provided by EVO management to the Board and Citi and relied upon by Citi in its analyses.  The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

50.   Notably the Preliminary Proxy Statement reveals that as part of its analyses, Citi reviewed the Management Projections prepared by the Company.

51.   The Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that EVO management provided to the Board and Citi.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

52.     With regard to the *Management Projections* prepared by EVO, the Preliminary Proxy Statement fails to disclose material line items, including the following:

    a.  Adjusted EBITDA, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: net income before provision for income taxes, net interest expense, and depreciation and amortization, and excluding share-based compensation, gain (loss) on investment in equity securities, financing costs, currency exchange impacts, and transition, acquisition and integration costs and includes net income attributable to non-controlling interests in consolidated entities (including related depreciation and amortization and income taxes);

    b.  Adjusted Net Income Per Share, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: net income adjusted to exclude income taxes, the impact of net income attributable to non-controlling interests in consolidated entities (including related depreciation and amortization and income taxes), share-based compensation, gain (loss) on investment in equity securities, financing costs, currency exchange impacts, transition, acquisition and integration costs, and amortization of acquisition intangibles and subsequently adjusted to give effect to a normalized tax rate for EVO, as well as the pro forma weighted average share count utilized; and

    c.  Unlevered After-Tax Free Cash Flows, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: stock-based compensation expense, taxes, capital expenditures and

acquisitions of businesses, and changes in net working capital.

53.     The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

54.     The Preliminary Proxy Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the various cases of projections rely.

55.     This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

56.     Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the Citi's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Citi*

57.     In the Preliminary Proxy Statement, Citi describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

58.     With respect to the *Selected Public Companies Analysis*, the Preliminary Proxy Statement fails to disclose:

        a.   The specific inputs and assumptions used to determine the utilized firm value

to calendar year 2023 adjusted EBITDA multiples of 9.5x to 11.5x;

    b.   The specific inputs and assumptions used to determine the utilized price to calendar year 2023 adjusted EPS multiples of 11.0x to 16.5x;

    c.   EVO's net debt;

    d.   EVO's non-controlling interest in consolidated entities as of June 30, 2022;

    e.   EVO's investments in equity securities as of June 30, 2022; and

    f.   The number of shares of EVO's Class A common stock outstanding on a fully diluted basis.

59.    With respect to the *Selected Precedent Transactions Analysis*, the Preliminary Proxy Statement fails to disclose:

    a.   The specific dates on which the selected transactions closed;

    b.   The aggregate value of the selected transactions analyzed;

    c.   The specific inputs and assumptions used to determine the utilized Firm Value / LTM Adjusted EBITDA multiples of 12.0x to 23.0x;

    d.   EVO's net debt;

    e.   EVO's non-controlling interest in consolidated entities as of June 30, 2022;

    f.   EVO's investments in equity securities as of June 30, 2022; and

    g.   The number of shares of EVO's Class A common stock outstanding on a fully diluted basis.

60.    With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose:

    a.   The terminal values for the Company calculated;

    b.   The specific inputs and assumptions used to determine the utilized perpetuity

growth rates of 2.50% to 3.00%;

    c.   The specific inputs and assumptions used to determine the utilized discount rate range of 10.25% to 11.50%;

    d.   EVO's weighted average cost of capital;

    e.   The specific inputs used by Citi including target capital structure, after-tax cost of debt, unlevered beta for EVO, tax rates, the equity market risk premium and risk-free rate;

    f.   EVO's net debt;

    g.   EVO's non-controlling interest in consolidated entities as of June 30, 2022;

    h.   EVO's investments in equity securities as of June 30, 2022; and

    i.   The number of shares of EVO's Class A common stock outstanding on a fully diluted basis

61.    With respect to the *Publicly Available Wall Street Research Analysts' One-Year Forward Price Targets* analysis, the Preliminary Proxy Statement fails to disclose:

    a.   The specific price targets utilized;

    b.   The identity of the Wall Street research firms and/or analysts who generated the utilized price targets;

    c.   The specific inputs and assumptions used to determine the utilized discount rate of 12.0%; and

    d.   EVO's utilized cost of equity, and the inputs and assumptions used to determine it.

62.    With respect to the *Premiums Paid Analysis*, the Preliminary Proxy Statement fails to disclose:

    a.   The specific selected acquisition transactions analyzed; and

    b.   The metrics for the specific acquisition transactions analyzed.

63.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

64.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public EVO stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

### FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

65.    Plaintiff repeats all previous allegations as if set forth in full herein.

66.    Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

67.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection

of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

68.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

69.     The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

70.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

71.     The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

72.     The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

73.     Plaintiff repeats all previous allegations as if set forth in full herein.

74.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

75.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement.  The Individual Defendants were provided with copies of, reviewed and approved,

and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

76.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of EVO's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

77.     The Individual Defendants acted as controlling persons of EVO within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause EVO to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled EVO and all of its employees.  As alleged above, EVO is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to exercise their fiduciary duties to disseminate

a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.       Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.       Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: September 13, 2022                    **BRODSKY & SMITH**

                                        By:  */s/ Evan J. Smith*
                                             Evan J. Smith
                                             240 Mineola Boulevard
                                             Mineola, NY  11501
                                             Phone:  (516) 741-4977
                                             Facsimile (561) 741-0626

                                             *Counsel for Plaintiff*